IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**JOHN R. OPSAHL**,                                                      Civil Case No. 08-1132-KI

               Plaintiff,

                                       OPINION AND ORDER

   vs.

**INTERNATIONAL LONGSHORE** and
**WAREHOUSE UNION, LOCAL 21,**
**PACIFIC MARITIME ASSOCIATION,**
**ILWU INTERNATIONAL**,

               Defendants.


      George P. Fisher
      3635 SW Dosch Road
      Portland, Oregon  97239

             Attorney for Plaintiff

Gregory A. Hartman
Thomas K. Doyle
Bennett Hartman Morris & Kaplan, LLP
111 SW 5th Avenue, Suite 1650
Portland, Oregon  97204

Robert Steven Remar
Leonard, Carder, Nathan, Zuckerman, Ross, Chin
   & Remar, LLP
1188 Franklin Street, Suite 201
San Francisco, California  94109-6839

    Attorneys for Defendants International Longshore & Warehouse Union
      Local 21, and ILWU International

Richard F. Liebman
Brenda K. Baumgart
Barran Liebman, LLP
601 SW Second Avenue, Suite 2300
Portland, Oregon  97204

    Attorneys for Defendant Pacific Maritime Association


KING, Judge:

    Plaintiff John Opsahl was employed as a longshoremen and was a member of defendant

International Longshoremen's & Warehousemen's Union Local 21 ("ILWU").  Defendant Pacific

Maritime Association ("PMA") is an association of American ship owners, stevedores, and

terminal companies that do business at ports on the west coast.  Opsahl brought this action

against the defendants alleging violations of the Americans with Disablities Act ("ADA"), the

Age Discrimination in Employment Act ("ADEA"), and Oregon age discrimination laws under

ORS 659A.030.  He also alleges Intentional Infliction of Emotional Distress.  Before the court

are the parties' cross motions for summary judgment.


Page 2 - OPINION AND ORDER

## FACTS

Plaintiff John Opsahl was employed as a longshoreman from 1978 through 1990.  In 1990, Opsahl sustained significant injuries to his leg while working on the waterfront in Longview, Washington.  Between 1990 and 1997, Opsahl remained off work on disability leave. During roughly the same period, he received medical benefits under the ILWU-PMA joint plan. In 1997, as his disability benefits were set to end, he officially retired  with a disability pension and full health care coverage from the ILWU-PMA.  In order to retire, Opsahl needed to complete a Disability Retirement Application.  Directly above where Opsahl signed the application, a provision reads, in part,

> I acknowledge that as of my Separation Date certified by the Trustees I will be permanently separated from and permanently required to forego all employment under a longshore or watchmen industry Collective Bargaining Agreement, and that my name will be permanently removed from all longshore or watchmen industry lists.

Decl. Brenda Baumgart Ex. 1, at 22.  After retiring, Opsahl sought to come out of retirement and re-register as a longshoreman in 2006, but was denied the opportunity.

Longshoremen registration lists are the way in which longshoremen are hired for jobs. Together, the ILWU-PMA make many, if not all, policy decisions regarding longshoremen employment and registration.  Under the ILWU-PMA registration system, waterfront workers are classified as either "casual" or "registered" depending on experience and seniority.  Workers typically start as "casual" and then after time gain class B "registered" status, and then eventually, class A "registered" status.  Workers are dispatched to work assignments based on their status on the registration lists.  If a would-be longshoreman is not on a registration list, he does not get dispatched to work assignments.

Page 3 - OPINION AND ORDER

Registered workers may be "deregistered"–removed from the lists and barred from covered waterfront work–for various reasons. For example, workers may be deregistered "for cause" as a result of workplace misconduct. In addition, all workers are permanently deregistered upon retirement as a condition of retirement and receipt of a pension. Any worker is eligible for retirement with a pension after 13 years of qualifying service.

Initially, registration issues are handled locally by a Joint Port Labor Relations Committee, which is comprised of ILWU local union representatives and PMA local employer representatives. If a worker is unsatisfied with the result at the local level, the local union may refer the matter to the Coast Labor Relations Committee ("CLRC"), which is comprised of ILWU and PMA representatives at the highest levels. CLRC decisions are binding and final, have precedential authority over the west coast contract system, and are deemed to constitute part of the west coast collective bargaining agreement. The CLRC holds the exclusive authority to permit pensioners to return to work.

In 1991, the CLRC formally adopted the rule requiring the permanent deregistration of all waterfront workers as a condition of their retirement and receipt of any type of ILWU-PMA benefits ("Deregistration Rule"). Since 1991 the rule has been included in defendants' joint collectively bargained Memorandum of Coastwise Rules Covering Registration/Deregistration. Pursuant to the rule, the CLRC denied the requests of all six retired workers who sought re-registration since the rule's enactment. Although the rule wasn't formally adopted until 1991, the policy had been in place since at least the mid-1970s, with the exception of an 18-month interim period beginning in 1980.

On August 29, 1980, the Trustees of the ILWU-PMA Pension Plan issued an interim decision which allowed them to conditionally re-register disability pensioners who had been physically rehabilitated.  Under the decision, if the pensioner provided reports from two physicians confirming that the applicant was no longer disabled, the pensioner could be re-registered as a longshoremen and his pension payments suspended.  The decision was initiated after a disability pensioner who suffered from cancer, Frank Martinez, certified that he no longer suffered from cancer and requested to be re-registered.

On February 8, 1982, however, the ILWU-PMA revoked the policy in another interim decision, stating that "any request for suspension of disability retirement status to return to active employee status . . . shall be denied."  Aff. George Fisher Ex. 3, at 1.  The decision was based on the death of Frank Martinez from the return of the cancer that had first been the basis for finding him disabled:

> For a generation prior to the August 29, 1980 Interim Decision, the Trustees followed an absolute policy of not reviewing determination [*sic*] of permanent and total disability.  This policy was the result of various considerations.  The Trustees have fully appreciated the difficulties inherent in assessing medical evidence respecting recoveries from grave illnesses and disabilities that justify a previous determination of total and permanent disability.  In an industry that cannot avoid, but only mitigate, dangerous working conditions, the Trustees may assume substantial liability if they erroneously make a decision that has the result of returning a physically unfit longshoreman to employment in the industry where he may exacerbate an illness or injure himself and others.  The result of the Trustees attempt to be flexible in the previous policy by allowing Martinez to return to work has failed . . . .

> Further, given the structure of the Plan, the Trustees must avoid administrative policies that encourage abuses that deplete assets.  Since the Plan values all years at the effective rate as of a retiree's retirement date, or the date of his earlier severance from the industry, a retiree could materially improve his pension when negotiations result in higher rates if such retiree could secure an additional year of service and then retire again.  The difficulties of assessing motives as well as

medical evidence, and the legal and administration costs inherent in an
administrative policy requiring such an assessment are justification for
reinstatement of the Trustees' policy of refusing to review an earlier decision of
permanent and total disability and the payment of substantial pension benefits.

Id.

In 2005, the same doctor who declared Opsahl permanently disabled in 1997 concluded
that Opsahl's years of hard work in physical therapy had enabled Opsahl to improve dramatically.
He declared that Opsahl was physically fit to return to work as a longshoreman.  Opsahl testified
at his deposition that earlier the same year, he had spoken to someone at the Social Security
Administration after his application for benefits was denied, and the person told him his benefits
application would be stronger if he worked for two additional years.  In early 2006, Opsahl spoke
with the President of Local 21 and asked to be re-registered as a Class A longshoreman.  Local
21 took the request to the Joint Port Labor Relations Committee, but the PMA refused to agree to
re-registration based on the Deregistration Rule.  Unable to resolve the dispute at that level,
Local 21 referred the matter to the CLRC.

On October 4, 2006, the CLRC considered the matter in a meeting.  The CLRC
unanimously agreed that Opsahl was ineligible for re-registration because of the Deregistration
Rule.  Under the ILWU-PMA's labor relations mechanism, this conclusively settled the matter.
Opsahl wrote a number of letters requesting reconsideration to no avail.

## STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact
and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The
initial burden is on the moving party to point out the absence of any genuine issue of material

fact.  Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate

through the production of probative evidence that there remains an issue of fact to be tried.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the

evidence is viewed in the light most favorable to the nonmoving party.  Universal Health

Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

Opsahl originally brought claims for (1) age discrimination under both the Age

Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA") and Oregon's age discrimination

statute, ORS 659A.030, (2) disability discrimination under the Americans with Disabilities Act,

42 U.S.C. § 12101 ("ADA"), and (3) intentional infliction of emotional distress.  Opsahl did not

prosecute or defend the emotional distress claim, and at oral argument he agreed to withdraw the

claim.

Defendants assert that there is no genuine issue of material fact that Opsahl's claims for

age and disability discrimination are time-barred and fail on the merits.

Opsahl argues that there is no genuine issue of material fact that his age and disability

discrimination claims succeed on the merits.

I.     Age Discrimination

In order to succeed on an ADEA claim, "[a] plaintiff must prove by a preponderance of

the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the

challenged employer decision."[1]  Gross v. FBL Financial Services, Inc., 129 S. Ct. 2343, 2351

---

[1] The burden shifting analysis under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) does not apply to ADEA claims.  Gross, 129 S. Ct. at 2346.

(2009).  Here, Opsahl contends that since the Deregistration Rule is based on pensioner status,
which can only be obtained after 13 years of service, it is necessarily age-based.  But "it would be
incorrect to say that a decision based on years of service–which is analytically distinct from age–
is necessarily age based."  Hazen Paper Co. v. Biggins, 507 U.S. 604, 604 (1993).  In Hazen
Paper, the Supreme Court explained the difference between decisions based on years of service
versus decisions based on age, for purposes of an ADEA claim:

> When the employer's decision *is* wholly motivated by factors other than age, the
> problem of inaccurate and stigmatizing stereotypes disappears.  This is true even
> if the motivating factor is correlated with age, as pension status typically is.
> Pension plans typically provide that an employee's accrued benefits will become
> nonforfeitable, or "vested," once the employee completes a certain number of
> years of service with the employer.  See 1 J. Mamorsky, Employee Benefits Law §
> 5.03 (1992).  On average, an older employee has had more years in the work force
> than a younger employee, and thus may well have accumulated more years of
> service with a particular employer.  Yet an employee's age is analytically distinct
> from his years of service.  An employee who is younger than 40, and therefore
> outside the class of older workers as defined by the ADEA, see 29 U.S.C. §
> 631(a), may have worked for a particular employer his entire career, while an
> older worker may have been newly hired. Because age and years of service are
> analytically distinct, an employer can take account of one while ignoring the other,
> and thus it is incorrect to say that a decision based on years of service is
> necessarily "age based."

Id. at 611.

Opsahl does not dispute that "the sole reason that the CLRC denied the referral seeking
Opsahl's re-registration was because the Defendants' longstanding Deregistration Rule . . . barred
Opsahl, as a pensioner, from re-registration."  See Defs.' Concise Statement of Material Facts
("CSMF") ¶ 17,  Pl.'s CSMF Resp. ¶ 17.  When pensioner status is acquired by virtue of the
employee's years of service, however, an employment decision based solely on pensioner status
does not violate the ADEA.  Hazen Paper, 507 U.S. at 613.  Such a result is logical because any

Page 8 - OPINION AND ORDER

ILWU longshoreman is eligible for a pension after 13 years of service, and thus even a person in his early 30s could obtain a pension and become subject to the Deregistration Rule.

Whether pensioner status is acquired by age or years of service is a key distinction for ADEA claims regarding employment decisions based on pensioner status. Opsahl argues that the Deregistration Rule is facially discriminatory under EEOC v. Local 350, Plumbers and Pipefitters, 982 F.2d 1305 (9th Cir. 1992), a case where pension benefits were age-based. In Local 350, a union denied a pensioner placement on an "out of work list" based on his pensioner status and a union policy against placing pensioners on the list. Id. at 1307. Union pensioners were not eligible for a pension, however, until they reached age 55. Id. at 1310. The Ninth Circuit held that the connection between pensioner status and age were close enough to reverse the grant of summary judgment to the union on the pensioner's ADEA claim. Id.

Local 350 is inapposite, however, for at least two reasons. First, Local 350 does not address employment decisions based on pensioner status when that status can only be achieved through years of service. Rather, that paradigm is addressed in Hazen Paper, where, as here, pension status was acquired based on years of service–not age. Second, the record in Local 350 contained references to its policy being linked to the preservation of work opportunities for younger workers–precisely the type of discriminatory stereotyping the ADEA was passed to combat. Such facts are not present in this case.

Accordingly, I hold there is no genuine issue of material fact that Opsahl was not denied an employment opportunity based on his age. Therefore, Opsahl's ADEA claim fails.

Opsahl's age claim under ORS 659A.030 fails for the same reason. Under the statute, "It is an unlawful employment practice: [f]or a labor organization, *because of* an individual's . . . age

. . . to exclude . . . from its membership the individual or to discriminate in any way against the individual." ORS 659A.030(1)(c) (emphasis added). For the reasons stated above, there is no genuine issue of material fact that Opsahl was not excluded or discriminated against because of his age. The defendants' made the decision not to re-register Opsahl because of his status as a pensioner.

Accordingly, I grant the ILWU-PMA's motion for summary judgment as to both the ADEA and state age discrimination claims and deny plaintiff's motion as to those claims.

II.    <u>Disability Discrimination</u>

In order to make out a prima facie case of disability discrimination under the ADA, Opsahl must show that he (1) has, or is perceived as having, a disability, (2) is a qualified individual, and (3) was unlawfully discriminated against because of his disability. <u>Nunes v. Walmart Stores, Inc.</u>, 164 F.3d 1243, 1246 (9th Cir. 1999).

The Ninth Circuit analyzes ADA cases using the burden-shifting analysis from <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44, 49-50 (2003). Under <u>McDonnell Douglas</u>, once plaintiff establishes a prima facie case, the burden shifts to defendant to provide a non-discriminatory reason for the adverse employment action. <u>Diaz v. Eagle Produce Ltd. P'ship</u>, 521 F.3d 1201, 1207 (9th Cir. 2008). If defendant does so, plaintiff bears the burden of showing defendant's reason was a pretext for discrimination. <u>Id</u>. To survive summary judgment, plaintiff must raise a material question of fact that defendant's proffered reason was pretextual. <u>Id</u>.

For purposes of this Opinion and Order, I assume without deciding that Opsahl is perceived as having a disability and is a qualified individual. The issue, then, is whether Opsahl was unlawfully discriminated against because of his disability.

Opsahl argues that the CLRC improperly substituted its own evaluation of Opsahl's ability to return to work in place of the proper ADA analysis of whether he may return to his job. Opsahl also argues that the CLRC must have had access to his medical records, and thus perceived him as disabled and discriminated against him on the basis of his disability. Both arguments are without any factual basis.

There is no evidence whatsoever that the CLRC had access to, or considered, Opsahl's medical records. In addition, the CLRC did not perform any evaluation of Opsahl's ability to return to work. As noted above, it is undisputed that the CLRC made its decision based on the Deregistration Rule, which bars pensioners from returning to work without regard to whether they became a pensioner for a disability-related reason.

When an employer "appl[ies] a neutral, generally applicable no-rehire policy in rejecting [an employee]'s application, [the employer]'s decision not to rehire [the employee] can, in no way, be said to have been motivated by [the employee]'s disability." Raytheon, 540 U.S. at 55. Accordingly, I hold that Opsahl has failed to meet his burden of establishing a prima facie case of disability discrimination under the ADA. To the extent Opsahl did raise a prima facie case, the ILWU-PMA provided a non-discriminatory reason–the Deregistration Rule–for the adverse employment action. Opsahl, however, failed to present evidence that the ILWU-PMA's reason was a pretext for discrimination. Thus, there is no genuine issue of material fact that the ILWU-PMA did not consider Opsahl's perceived disabilty, and decided not to re-hire him based on his

Page 11 - OPINION AND ORDER

status as a pensioner subject to the Deregistration Rule.  Therefore, I grant the ILWU-PMA's

motion for summary judgment and deny Opsahl's motion as to this claim.

III.    <u>All Claims are Time-Barred</u>

Even if Opsahl's claims had been viable on the merits, they would still fail because they

are each time-barred.  Opsahl's age discrimination claim is time-barred because he never filed a

charge with the EEOC.  Under the ADEA,

> No civil action may be commenced by an individual under this section until 60
> days after a charge alleging unlawful discrimination has been filed with the Equal
> Employment Opportunity Commission. Such a charge shall be filed–
>
> . . . .
>
> within 300 days after the alleged unlawful practice occurred, or within 30 days
> after receipt by the individual of notice of termination of proceedings under State
> law, whichever is earlier.

29 U.S.C. § 626(d)(1).  This section "limits the period in which an aggrieved employee may

initiate an action under the ADEA." <u>McClinton v. Ala. By-Products Corp.</u>, 743 F.2d 1483, 1484

(11th Cir. 1984).  The "notification requirement is a prerequisite to an action based on the

ADEA, and is intended to promote the speedy, informal, non-judicial resolution of

discrimination claims, and to preserve evidence and records relating to the alleged discriminatory

action." <u>Id.</u> at 1485 (citations omitted).

Opsahl first learned that he would not be re-registered when his local union representative

informed him of the CLRC's decision on November 27, 2006.  He never filed a charge with the

EEOC.  Instead, he filed this lawsuit on September 29, 2008.  Since Opsahl did not file the

charge with the EEOC prior to filing the instant action, his ADEA claim is barred by the statute.

Page 12 - OPINION AND ORDER

Under the ADA, "A charge . . . shall be filed [with the EEOC] within one hundred and eighty days after the alleged unlawful employment practice occurred," or "within three hundred days" if the aggrieved person initially instituted proceedings with a state or local agency.  42 U.S.C. § 2000e-5(e)(1).  Under this section, "Such a charge must be filed within a specified period (either 180 or 300 days, depending on the State) after the alleged unlawful employment practice occurred, and if the employee does not submit a timely EEOC charge, the employee may not challenge [the employment decision] in court." Ledbetter v. Goodyear Tire & Rubber Co., Inc., 550 U.S. 618, 623-24 (2007).

Opsahl filed his disability discrimination charge with the EEOC on April 29, 2008–some 511 days after his claim accrued.  Since his EEOC charge was not timely submitted, his ADA claim is time-barred.

Opsahl's state age discrimination claim is also barred by the statute of limitations.  "[A] civil action . . . alleging an unlawful employment practice must be commenced within one year after the occurrence of the unlawful employment practice."  ORS 659A.875(1).  Again, this civil action was not filed within one year.

Opsahl argues that his claims are not time-barred because, although his own claim falls outside the limitations period, the ILWU-PMA has a systematic policy of discrimination and the continuing violation theory applies.  E.E.O.C. v. Local 350, Plumbers and Pipefitters, 982 F.2d 1305, 1308 (9th Cir. 1992) ("Under the continuing violation doctrine, a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period.").

Page 13 - OPINION AND ORDER

The "continuing violation" theory does not apply here, however, because Opsahl's denial of re-registration was a temporally discrete act. The U.S. Supreme Court has considered when the continuing violation theory may or may not apply:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." [The plaintiff] can only file a charge to cover discrete acts that "occurred" within the appropriate time period.

National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002). The Ninth Circuit has held that the Morgan principle applies to all sorts of civil rights laws, including the ADEA. Cherosky v. Henderson, 330 F.3d 1243, 1246 n.3 (9th Cir. 2003). In addition, this court has previously held that Oregon's "continuing tort" theory is the same as the continuing violations theory set forth in Morgan. Tu v. Kaiser Found. Health Plan of the NW, CV-07-968-KI, 2008 WL 3871742, at *11 (D. Or. Aug. 19, 2008). Therefore, the theory is equally unavailing when applied to Opsahl's state age discrimination claim.

For the above reasons, I hold that all of Opsahl's claims not only fail on the merits, but are barred by the applicable statutes of limitations.

I decline to address whether Opsahl contracted away any right to re-registration by signing the Disability Retirement Application or by accepting a $300,000 settlement from a Longshore Harbor Worker's claim in 1999.

///

///

Page 14 - OPINION AND ORDER

**CONCLUSION**

The ILWU-PMA's Motion for Summary Judgment (#45) is granted.  Opsahl's Motion for

Partial Summary Judgment (#53) is denied.  This cause of action is dismissed with prejudice.

IT IS SO ORDERED.

Dated this _____15th_____ day of July, 2010.


   ___ /s/ Garr M. King_____
   Garr M. King
   United States District Judge